Honors and may it please the court. My name is Matt Nicholson. I'm from the law firm of Williams and Connolly and I represent the appellant PRMI. I'd like to begin today by discussing the issues of allocation of the settlements, both because these issues are dispositive of the case and because they're controlled by this court's decision in United Health and by the Minnesota Supreme Court's decision in Kings Cove. I'll start by discussing the RFC's settlement with the trusts and then I'll turn to its settlement with the monoline insurance companies. Here, the district court erred in approving ResCap's allocation of the trust settlement. Under United Health and Kings Cove, ResCap was required to allocate the settlement based on how a reasonable defendant would have assessed the relative value of the claims. But despite ample opportunities, ResCap failed to allocate based on relative value and the district court erred by not holding ResCap to that burden. This error requires reversal and entry of judgment for PRMI on the trust settlement, much like this court affirmed summary judgment for the defendant in the United Health case. As an initial matter, the district court below applied the wrong legal standard to the question of allocation. The court disregarded the relative value test and it instead held that ResCap only had to prove allocation to a reasonable degree of certainty. A reasonable degree of certainty is simply a standard of proof for damages. It's not the substantive test for proving allocation of a settlement. The substantive test was set forth by this court's decision in United Health and then confirmed by Kings Cove by the Minnesota Supreme Court. The test is that when a party is seeking indemnity for a part of a settlement that's an aggregate settlement covering indemnifiable and non-indemnifiable claims, it has to allocate the settlement after the fact and it has to do that by proving how a reasonable defendant at the time would have valued the indemnifiable claims relative to the non-indemnifiable ones. That test applies with full force here. Here ResCap was seeking indemnity from PRMI for a portion of the trust settlement that was generated from PRMI's loans, but the trust settlement was an aggregate. Counselor, let me just interrupt because in United Health it was allocation between covered and uncovered claims in an insurance context. Here we're talking about allocations among what I would call in this context covered claims. Everybody was covered. That is they were originators or they were, you know what I'm saying. There is no uncovered universe here. In the context of the Miller-Sugar line of settlements under Minnesota law, I don't see any basis to require such a categorical approach. A couple of points, Your Honor. First, this case was a case between ResCap and PRMI. PRMI only agreed to cover claims that were resulting from events of default on its loans. For purposes of this case, all other claims are the uncovered claims. That would include claims involving- Counselor, I just think that's wrong. My colleagues may agree with that, but I think in this context of the settlement with the trust purchasers, I think that statement's wrong. Well, Your Honor, a couple of points. One, not only do they have to allocate between the claims involving our loans and claims involving other loans, but they also have to allocate, which I'll get into in a moment, the non-indemnifiable claims involving their own misconduct. I do think that it fits into the metric of United Health and Kings Cove because the inquiry here is the same. We agreed to indemnify only for a portion of the settlement, just like the insurers in those cases agreed to cover only a portion of the settlements. Here, ResCap has to prove what portion of the settlement that is, just as the insurers in those cases had to prove the portion of the settlement attributable to the covered claims. Here, ResCap failed to do that, Your Honor. They failed to prove the relative value of the claims. The relative value of a claim obviously depends in large part on the strength of the defenses to that claim. Kings Cove, I think, makes that clear. A party seeking to get indemnity needs to account for the likelihood of favorable or unfavorable rulings on defenses. Here, ResCap simply failed to do that. It disregarded defenses altogether. Its expert allocated the trust settlement on the assumption that RFC would have settled each trust breach claims for 28 cents on the dollar, but that ignored entirely that RFC had a defense that claims by the older trusts in which PRMIs loans were concentrated were subject to a statute of limitations defense under New York's six-year statute. That defense was one that was supported by case law at the time of the settlement. It was a defense that could be raised at a motion to dismiss, adjudicated on it as a matter of law. It's a defense that was vindicated after the settlement by unanimous New York appellate courts. It's a defense that, if raised, would have eliminated RFC's liability to certain of the older trusts. I think if the Kings Cove relative value test applies here and it means anything, then a party needs to account for that potentially dispositive defense. It's hard to imagine any other defense that would more clearly impact the relative value of a claim. Yet, here, ResCap didn't make any effort to account for that defense. Instead, it disregarded it entirely, and in doing so, prejudiced PRMI whose loans were concentrated in these older trusts. It's our view that because ResCap failed to prove a relative value... Counsel, what's your basis for saying that ResCap refused to account for the statute of limitations defense in negotiating the settlement with the trust? Your Honor, we believe that they did account for it when negotiating the settlement with the trust, but that only underscores that it should be accounted for in the allocation. Kings Cove makes clear that the analysis for the overall size of the settlement is the same as the analysis for allocating. You look at the same factors. Here, no one would reasonably dispute that when RFC was settling with the trust, it got a big discount because of the statute of limitations defense, which was a potent defense. When allocating, ResCap needs to account for the fact that that discount is attributable to certain trusts and not others. Namely, 339 of the 506 trusts were subject to this statute of limitations defense, so contributed less to the settlement and led to what you're discussing, which is that the settlement overall was lower. They need to account for that on the back... This is true even though in making warranties to the trust, ResCap did it on a pool wide basis. In other words, did not make individual representations or warranties as to various originators who might be in a particular pool, right? Well, your honor, when it was making representations to the trust, it made some representations about individual loans. It made some on a pool wide basis, but regardless, all of those claims get subjected to the statute of limitations defense, which doesn't turn on whether the particular representation is individualized or pool wide. It applies to all of the representations because they're made at the time the trust closes, and so any trust that was closed six years before the bankruptcy would have been subject to this very powerful defense. Our view is that ResCap needed to account for that defense when it did its allocation, and because it did not, it failed to prove relative value, and we were entitled to entry of judgment in our favor. Now, the district court nonetheless approved... On that point, Mr. Nicholson, I understood the district court to say in part at least that there were multiple factors that could have been raised as strengths or weaknesses of individual claims, and therefore it was reasonable to just, I guess, not attempt to account for all the different pluses and minuses. Would that be a reasonable approach for a settling defendant to take in a case like this? No, Your Honor. I don't think it would, and a couple points to that. One, yes, there were multiple defenses raised, but ResCap's own expert identified only one as being colorable, the statute of limitations, so that's why we're focusing on that one, but to the extent that other defenses were material and would have been accounted for by a reasonable defendant, that only shows that ResCap should have accounted for those defenses in its allocation. It doesn't mean you get to ignore defenses across the board, and it's no answer for ResCap to say that that's infeasible because Kings Cove, I think, makes clear that allocating based on relative value can sometimes be a difficult task, but it puts the burden of proof of relative value on the party seeking indemnity, which is ResCap. Another point, Your Honor, is that the reason for that is that the settling party, who ResCap is standing in the shoes of the settling party, is in the best position to not only know the relative value of the claims, but also to shape the record at the time of settlement, so it makes sense to put that burden on them, and they shouldn't be allowed to escape the burden by saying, oh, it's too difficult, it's infeasible to account for more than one defense. As to the statute of limitations defense, Your Honor, I don't think it would have been difficult for them to account for that because we've identified for them the 339 trusts that it applied to. It's a binary defense. It either applies or it doesn't. It was supported by case law at the time of the settlement, although there was some case law going the other way. Their expert could have come forward with an estimate of the likelihood that that defense would prevail. Their damages expert then could have calculated a range of damages based on that, and we could have rebutted all of that, but ResCap simply failed to do so because it insisted it didn't have to prove relative value at all, that it merely had to come up with a, quote, reasonably certain way of allocating the settlement. Counsel, let me ask a step back and see the big picture, which is very complicated here. What I'm hearing is that if all of the originator defendants had refused to settle and taken the position of your client, and this argument had prevailed, the middleman would have been left holding the bag. I don't think that's correct. I think that what they would have done was they would have accounted for the relative value when allocating the settlement among originators. No, no, no. On the same record. They had used the same expert since they're defending a multi-party settlement as reasonable, and they had taken this approach, and all of the originators were defendants, and they'd all win, and the middleman is holding the bag. Well, Your Honor, they might win because... Just yes or no. Yes. Am I understanding your theory correctly? Yes, because they had the burden to prove relative value under Kings Cove and United Health. They didn't do that, and as a result, the allocation is speculative and can't be used. We think, though, that it was particularly prejudicial for a party like PRMI, whose loans were concentrated at a higher relative rate in these older trusts subject to the statute of limitations defense. I think to rule for res cap here would basically mean you never have to account for any defenses because, as I said, it's hard to imagine a contract relative value than a statute of limitations defense, and any reasonable defendant would have taken that defense into account in settling, and RFC, in fact, did so. To turn briefly, Your Honor, to the monoline settlements, we submit that the court also should reverse and direct entry of judgment on the monoline settlements, which would resolve the remainder of this case. Monoline settlements, Your Honor, should be... The allocation there was faulty for two reasons. The first is that the monoline settlements covered claims by insurance companies that RFC committed fraud because it made representations that it knew were false. Contrary to the district court's holding here, the contracts of this case do not require a client like PRMI to indemnify RFC for those claims, which are false. Second, under UnitedHealth, RFC was required to value those non-indemnifiable fraud claims in its allocation, but it failed to do so, so its allocation is doomed under UnitedHealth. Now, as to the first point, Your Honor, Minnesota courts disfavor indemnity for a party's own torts, and they strictly construe indemnity clauses. To pass strict construction, a clause needs to contain specific express language providing indemnity for claims based on a party's own tortious conduct. Here, we don't think that the contracts even provide specifically for indemnity for RFC's own negligence, but they certainly don't provide, in clear and unequivocal fashion, indemnity for RFC's own fraud. ResCap and the district court here- Counsel, can I just ask, what was the fraud other than failing to disclose loan defaults by the originators? Well, Your Honor, the fraud that was alleged was that RFC went out and represented to these insurance companies that the loans had been underwritten in substantial compliance with the client guide when, in fact, it bought the loans from originators pursuant to other guidelines. There really is no connection to a breach by an originator. It's based on fraud by RFC. That's the claim. Here, the language doesn't cover that. ResCap points to language referring to claims resulting from a breach of any representation, warranty, or obligation made by RFC, but that language is limited to breaches of representations that RFC made, quote, in reliance upon, close quote, the client's representations. It doesn't specifically cover breaches of representations that RFC knew were false, which is what the monolines alleged. If anything, the language actually suggests the opposite. It fails strict construction, and PRMI is not required to pay indemnity for claims sounding in RFC's own fraud. I think to conclude otherwise would be unprecedented. ResCap hasn't cited a single case, and we're not aware of any, in which a court applying Minnesota law prior to this case had ever interpreted a contract to provide indemnity for a party's own fraud. Then turning to the allocation question, under UnitedHealth, ResCap needed to value both the non-indemnifiable fraud claims and the indemnifiable claims against PRMI and others, but it didn't do that. Here, its expert admitted that the fraud claims were an important element of the monolines claims and that those claims threatened RFC with greater damages, but it completely failed to value those claims as part of its allocation. Its experts never valued the fraud claims and never distinguished between fraud claims and other claims in the settlement, so the fact finder here would have been left to speculate as to how to perform that allocation. Under UnitedHealth, that requires entry of judgment for PRMI. I have a question before you wrap up on this negligence fraud question you discussed. It seemed like one of the orders in the district court, there was one that relied on the term obligation, but then there was a separate order that seemed to rely on the language based on or resulting from the breach, da-da-da. Yes, sir. Do you think that prefatory language is sufficient to extend the clause beyond the breaches themselves? It is not for this reason. They say that a negligence claim or a fraud claim can be a claim resulting from a breach of a representation by RFC, but that language is limited to breaches of representations RFC made in reliance upon a client's representation. It doesn't expressly cover a fraud or a negligence claim, which would have to be based on a breach of a representation that RFC knew or at a minimum should have known was false. I don't think it passes strict construction even if you adopt that alternative reading. The court's primary reading obviously was to focus on the word obligation, which we don't think is sufficient, but even ResCap's alternative reading that you say these claims were resulting from, I don't think works because there's no new or should have known language. There's no reckless disregard language. There's no language that sounds in indemnity for fraud or negligence. Your honors, with the remaining time, I'd like to turn briefly to the issue of attorney's fees. Here, the district court abused its discretion by awarding ResCap attorney's fees and costs that were grossly disproportionate to the amount involved. As this court has explained, attorneys should not be permitted to run up bills that are greatly disproportionate to the benefits that may reasonably be attainable, yet ResCap did exactly that. It knew or should have known that its damages would be around 5.4 million from the early stages of this case at a minimum because it had developed a damages model in earlier cases, yet it proceeded to expend and the district court awarded over $14 million in fees and costs. By any measure, your honor, that award was grossly disproportionate. It exceeded ResCap's damages by over $8 million, and even if you include prejudgment interest, it still exceeded ResCap's total recovery by over $6 million. There's simply no precedent for such an award. The district court and ResCap haven't cited a single contract case from Minnesota or any other jurisdiction in which a court has made an award that exceeded damages by millions of dollars, much less $6 to $8 million, and the district court here failed to provide any reasonably specific explanation for that massive award. I see that I'm out of time, so if the court has no further questions, I'll save the remainder of my time for rebuttal. Very good. Ms. Sullivan? Good morning, your honors, and may it please the court. Kathleen Sullivan for the ResCap Liquidating Trust. I'd like to begin with the fraud negligence issue because the contract makes clear that Judge Loken was right at the outset to say, here, we're talking about all covered claims and only how to allocate covered claims among the relative culpability of the wrongdoing originators. Why the contracts satisfy the requirement in the DeWitt case, in which, of course, Minnesota law says to shift an indemnity obligation onto the indemnitor, a contract not only has broad language, which, of course, ours does, but also must link the breadth of the covered claims, and here the covered claims are all losses resulting from an event of default, meaning a breach by PRMI, and without limitation, any liabilities arising from any claim resulting from a PRMI breach. We have very broad language here, but DeWitt also requires a link between the claims and the indemnitor's agreement to take on indemnity for even the indemnity's own negligence. Here we have a textbook case where PRMI assumed the indemnity obligation for RFC's, ResCap's predecessors, own unproven negligence or fraud. Now, you can get this, as Judge Compton suggested, from the obligation language because we're liable for anything that flows, claims against us that flow from PRMI's breaches of ... I'm sorry, we're obligated, we're sued for breaches of representations, warranties, or obligations, and as the district court correctly held, citing the Abu Dhabi case, obligations include tort duties, but there's also ... Well, wait a minute. I have a question on that. Why is the tort duty an obligation made by RFC? We have an obligation to act reasonably with RFC as a duty to the trust and to the trust with whom it contracts to securitize the breach of the loans as an obligation not to breach any warranties or reps to them, and it also has an obligation under tort law to act reasonably. Now, Your Honor, if I could take to ... My concern is whether that's an obligation made by RFC like the obligations made in the contract or whether that's an obligation imposed by an outside force, namely the common law. We think that the term obligation properly imports the common law. We have an obligation in contract not to breach our reps or warranties to the trusts who bought out the securities we passed on. We also have a common law obligation to act reasonably, but Your Honor, if I could turn you to what I think is the key to unlock this mystery, it's A200 of the guide, and A200 is the complete answer if you have any doubt about all the language in A212 and A202II, the indemnity clauses. If you look at those indemnity clauses and you see that language about reps, warranties, or obligations that we hold to the trust, turn to A200 because A200 could not be a more textbook case of what DeWitt under Minnesota law requires before we put an indemnitor like PRMI on the hook for the indemnity's own conduct. A200 says expressly that RFC, Rescat's predecessor, is relying on the truth of PRMI's statements and PRMI is liable regardless of whether RFC knew or reasonably could have discovered the facts that showed that PRMI had made misrepresentations in the loans, PRMI expressly assumed indemnity obligation for those things we reasonably could have known. Couldn't be a clearer shift of responsibility to PRMI for RFC's own negligence. The district court correctly read that RFC had 203II and A212, the two indemnity provisions, to be construed in line of A200. And remember, of course, DeWitt doesn't require magic language. My colleague on the other side says, oh, well, you didn't say negligence in the indemnity clauses, but you don't have to under DeWitt. DeWitt just wants express language saying PRMI has taken on liability even if Rescat is later sued for, Rescat's predecessor, RFC's own negligence. Now as to the fraud, remember we're talking about unproven fraud claims. I wouldn't be standing here if there were proven fraud claims, but there was no admissible evidence at the trial that there was any fraud. And Judge Loken, you're exactly right that the fraud claims here are just contract claims dressed up with cnter. The fraud claims are PRMI, the trust and the monoline say to RFC, you sold us or caused us to insure securities that were full of junk mortgages because PRMI didn't underwrite the mortgages in compliance with the trust or fraud claim with cnter. Your Honor, New York law, which governs the trust contracts is so clear, you can't have duplicative damages for contract and fraud claims that are based on the same conduct. So with respect, my colleague here is trying to create non-covered claims by relying on the wrong supposition that there were proven fraud claims. There were no proven fraud claims in this case. There's no public policy violation in enforcing the indemnity clauses. All the claims were settled. There weren't any proven claims at all as I understood it. That's right, Your Honor. Nor was there any admissible evidence in the trial in our case, the bench trial in our case, to show that there would have been un-indemnifiable fraud claims. And at the bankruptcy, there was no proof of fraud. So you're right, all of them were settled, but they're all covered by the contract language. Now, Your Honor, this is important to the allocation issue, and I'd like to turn to that. So far we've talked about, do you have to allocate between covered and uncovered claims? Answer, no, because all of the settled claims, whether they sounded in contract or tort, were covered by peer-advised indemnity obligation to RFC, our predecessor. Now, Your Honor, what was at issue in the allocation of the settlement? And I'd like to turn to that issue, if I may. It was not allocation among covered and uncovered claims. It was allocation among different originators for their relative fault. It was allocation according to relative culpability. Now, to put this in context, Your Honors, as Your Honor, it arose out of seven years of litigation, ably presided over by the District Court, who's issued now 672 pages of opinions in the two summary judgment rulings, the bench trial findings here, and the post-trial order. And just to remind Your Honors, this case arises in the context of $1.3 billion of indemnity. $1.3 billion, with a B, dollars of indemnity claims that my client, the Res Camp Litigating Trust, has obtained for the ultimate victims of these shoddy mortgage loans that PRMI packaged. The money doesn't come to RFC. It comes to RFC to be passed through the ultimate victims, the investors in the securitized RMBS Trust. And in order to divide up that $1.3 billion of settlements, we, in these litigations, relied on, and this is the key, the exact same allocation methodology that the parties to the bankruptcy settlements relied on. I'll say that again, because it's the key to the case. There's no legal error here under United Health. United Health and Kings Cove were about unallocated settlements. That's why the courts later had a dilemma. Nobody allocated the settlements at the settlement. So now we have to figure out how to allocate the settlements post hoc. This case is the opposite. This is a case where the relative claim recoveries were allocated among the settling trusts at the bankruptcy. So this is an allocated settlement. And the district court said, I am going to approve as reasonable and non-speculative an allocated damages award under the indemnity claim that uses the exact same methodology. Now, here's why there's no legal error. I'd like to go back to my colleague's incorrect assertion. I couldn't agree more with the suggestion that Judge Logan urged before, that United Health did not impose a categorical one-size-fits-all relative value test for every case. The more proper legal framework under Minnesota law is the framework the district court applied, relying on cases like Northern States, which are about situations where you have to divide liability pro-rata, damages pro-rata, among many wrongdoers. Northern States was, of course, a time on the risk pro-rata allocation for a long-tail environmental contamination claim. This is about dividing responsibility pro-rata among all the originators, who in a sense created the financial equivalent of a toxic waste dump, a set of securities loaded with faulty mortgages because of PRMI's breaches. And Your Honor, just as Northern States counseled that you have to have a fact-dependent, flexible standard for allocating pro-rata among different wrongdoers, so the district court did that here. Now, I want to focus on why this allocation methodology was so correct under United Health. In a way, this case took Your Honor's decision in United Health and kind of created a master class in the trial. United Health invited ... It said, allocation will be benefited if the parties present testimony from attorneys involved in the underlying lawsuits, evidence from those lawsuits, expert testimony evaluating the lawsuits, a review of the underlying transcripts and other admissible evidence. And in this trial, the district court in allocating damages to PRMI ... Remember, there's 80 other originators. What the district court had to do is say, PRMI's share of liability for the breaching losses, as compared to the 79 other originators of defective loans, is this much. And in doing so, she relied on the exact same methodology that the parties at the bankruptcy settlement used, the allocated breaching loss methodology. Now, we've talked about how there was no need to allocate among the different claims for coverage ... Covered or uncovered claims because unproven fraud and negligence claims are indemnifiable. Now, I'd like to turn to this issue about the defenses. Why was the district court's allocation, textbook northern states and textbook evidence under United Health ... She looks to the bankruptcy settlement. She says, I'm going to use the exact same methodology that the parties to the bankruptcy, RFC and the settling trusts and model lines used here. And it's a loan by loan methodology. It basically says we figure out what each trust is entitled to in terms of the settled claim, based on how many breaching losses they were harmed by. And here we decide how to allocate responsibility to PRMI as one of the creators of breaching loss, by determining, by the same methodology, how many breaching losses PRMI was responsible for. It's the same methodology. And my colleague on the other side says, oh, but you needed to factor out defenses. And I want to say why there was no legal error in declining to qualify the breaching loss methodology by the relative value of defenses. And I want to stress, your honors, that defenses like the statute of limitations were discussed at the bankruptcy settlement. Let's remember, let's go back to the bankruptcy settlement. Who's there? The trustees for the trusts. They have fiduciary duties to their investors. The certificate holders of these damaged RMBS. They have fiduciary duties to them to maximize their recoveries. And at the bankruptcies, the unsecured creditors committee and some of the trusts said, oh, well, we deserve more allowed claims than other settling parties because RFC would have time-bar defenses against them, so we should get more money. And it was considered and rejected at the bankruptcy that you should introduce defenses as a way of qualifying the claims. And who agreed to that? The parties to the bankruptcy settlement. Now, my colleague, Mr. Nicholson, says you should look only to the perspective of the defendant, RFC, the putative defendant in the bankruptcy settlement, RFC. That's not what United Health says. It says look to the perspective of the parties to the settlement. And the RMBS trustees, based on their own experts' testimony, Mr. Pfeiffer from Duff and Phelps, the RMBS trustees said we're not going to qualify for statute of limitations or other defenses. We're going to take that out of the picture. We think there's a reasonable and fair settlement even if we don't separate the settling claimants based on the relative strength or weakness of defenses like the SOL. RFC, if you do want to look at the perspective of RFC, the putative defendant of the bankruptcy settlement, it too agreed that you don't have to take the statute of limitations into account because it proposed the allocation from the bankruptcy in its own bankruptcy plan. And a bankruptcy judge, a United States bankruptcy judge, approved as fair and reasonable an allocation based on breaching loss methodology as part of RFC's bankruptcy plan. What would be the reason for saying we're not going to consider statute of limitations defense if it's a 50-50 issue at best and knock out a bunch of claims entirely? Why wouldn't that naturally be the sort of thing that's factored into a settlement? Two reasons, your honor. Number one, it was highly speculated at the statute of limitations. Well, I don't know if it was highly speculative if you had conflicting U.R. court decisions that sounds like a 50-50 chance which turned out to be correct. But go ahead. What else? I understand, your honor. There's a second reason and it's Pandora's box. Remember what you're allocating here is relative fault. There were many defenses discussed at the bankruptcy and there were many defenses discussed at trial. With respect, my colleague was incorrect to state that our expert said only the statute of limitations defense was viable. To the contrary, at addendum 376 to 79, you'll find findings of fact by the district court citing multiple defenses. So if you've got 80 originators and 12 defenses and you've got to do relative culpability determinations among them, why should we cherry pick the statute of limitations defense which happens to benefit Mr. Nicholson's client and ignore the materiality and causation and other defenses that might benefit other clients? Northern state says you don't need to do that. Northern state says you don't want to go into some unadministerable multifactorial comparison of all the relative strengths and weaknesses which makes you spend so much money that you spend more on experts than anybody's going to recover. That would be silly. So it's the speculative and unreasonable nature of factoring the relative strengths and weaknesses of different defenses into the calculation here that makes the district court's decision correct, not an abuse of discretion, not clear error, and not legally erroneous in adopting the exact same allocation method that the bankruptcy parties adopted. Dr. Stowe at trial was asked directly, what would you have to do if you had to compare different relative defenses? And he said, well, I'd have to start doing equations out to many orders of magnitude. So the difficulty and speculative nature of comparing different relative defenses, your honor, just to put it in one basic concept, this is a relative determination. It's kind of a zero sum game. If PRMI's exposure goes down because more of the claims against RFC for PRMI junk loans would be time-barred, somebody else's responsibility is going to have to go up. We settled $1.3 billion of these claims based on the very same methodology. It was fair to all the different originators to allocate based on the same methodology as everybody else. Your honor, I see I have only a minute for fees. Certainly no due process violation and certainly no abuse of discretion. My colleagues on the other side had ample access to everything due process requires, redacted invoices, workbooks, declarations that are discussed in the district court's 70-page fee decision. Why were these extensive redactions really necessary? I mean, there are all these entries that say, you know, five hours drafting blank or three hours discussing X. If it's just, you know, drafting a brief that was filed and everybody knows that it was filed, why is that such a big secret? We normally review these things and we see, well, they spent five times more than they should have on this particular brief and so maybe it should be discounted. Why is it not disclosable? There's privilege. It's accepted that there were, the district court found there was permissible privilege basis for the redactions. Your honor, may I continue past the red light just to finish the answer? Yes. Thank you, your honor. So first, there's no case that has ever held that redacted invoices violate due process. In fact, Yamada, my colleague's principal case from the Ninth Circuit, found a due process violation when there were no invoices and then the remedy was to give redacted invoices. So I don't think there's any legal basis to say the redactions were a problem here, but there was so much more. There were workbooks, there was the district courts and declarations and other cases, I'd say to your honor's own decision, an in-ray genetically modified rice, which said that summaries and declarations are adequate substitutes for invoices, redacted or not. And finally, your honor, unproportionality. The apples to apples in award. It's rather $10.6 million in fees, because you shouldn't add costs to that, and $7.9 million in award because pre-judgment interest under Minnesota law is part of the damages. So we're not talking a 2.7 to 1 ratio, we're talking a 1.3 to 2 ratio. And as the district court expressly found at addendum 534 to 35, Minnesota courts routinely approve awards, even in contract cases, that are three or four times the recovered amount. So there's no legal error. This isn't just... Right. Counsel, why does the federal court have to accept Minnesota's definition of when pre-judgment fees, how long they extend, when this is clearly post-judgment interest? It seems to me this is... I don't think the federal court has to accept that. Your honor, we respectfully believe that under ERIE, state law does control the issue of pre-judgment interest, because Minnesota law clearly, as the district court... Yes, but doesn't federal law define when the judgment occurs? And we have all kinds of litigation over how far, over when, at what point, is there sufficient judgment to take an appeal, for example. I understood, your honor, and that's the federal law definition. 10% interest in the economic conditions that we're talking about was punitive. Your honor, I understand... And it was punishment. I don't see why federal law has to allow a false definition or a contrived definition of when the judgment occurs, so that we can impose punitive interest posing as damages. Your honor, I respectfully think that 1961, the federal post-judgment interest statute, does not control the accrual date for the post-judgment interest. Does federal law or does state law? When the state law reaches a... I'm talking about the last 500,000. I understand, your honor. I think state law is contrived, it's punitive, and I don't understand why, even with all our case law to the contrary, why it has to govern here. Your honor, we respectfully submit that the judge relied on governing Minnesota law about how to calculate pre-judgment interest, and under Erie, state law controls the definition of damages, and under state law, pre-judgment interest extends up to the date of final judgment. Your honor, if you want a federal law analog, there's no federal appeal that can be perfected until there's a final judgment. Here, the final judgment was a post-award judgment because the district court expressly reserved fees, costs, and pre-judgment interest until further briefing and final judgment. We think under the conditions of this case, where there was clearly no final judgment that was appealable, federal law and state law are really the same. As to the rest of the fees, your honor, we respectfully think there's no abuse of discretion. The district court was close to this case. She oversaw these... Your time's up, and we've read the briefs on this. Thank you very much, your honor. Thank you for hearing our case. Is there rebuttal time? I don't think so. I'll give you a minute, Mr. Nicholson, just to respond. I believe I had reserved five. Yes, but we don't show the light with the five. Okay. That's your job. Fair. I thought I had cut it off at 15 minutes, but if I didn't, I apologize. A couple points, your honor. First, my friend on the other side's main argument here was that all claims were covered. That's not true as to allocation. We didn't agree to indemnify claims involving other loans, and we didn't agree to indemnify claims involving their own fraud. She also cited northern states, but that's a case about the special problems of environmental pollution, where you have to divide up an injury that can't be divided. That's not the case here, where you have discrete claims, some of which we agreed to indemnify, some of which we didn't. You have to do an allocation, and UnitedHealth is the test. She also pointed to the allocation in the bankruptcy, but your honor, the settlement between RFC and the trust was not allocated. That's what RFC argued. That's what the district court held at addendum 153. What she's referring to instead is the way the trustees divvied up funds amongst themselves. Your honor, that's not material here for two reasons. One, it didn't distinguish between indemnifiable claims involving PRMI and non-indemnifiable claims involving everything else. Two, when trustees divvy up money, the spoils of a settlement among the plaintiff trusts, they don't have to do the relative value analysis. They instead have very broad discretion to divvy up funds in straightforward ways without accounting for relative value. That's what they did here, and that's what they've done in other bankruptcies. My friend also talked about contemporaneous evidence of what they did in the bankruptcy, but of course, the district court also excluded the most critical piece of contemporaneous evidence, which was the supplemental term sheet showing that RFC and the trust agreed to attribute much less value to the older claims. However, the trust decided to divvy up the spoils later. During the settlement, at the settlement table, the trust agreed that those claims had less value. As to the statute of limitations, she argues that the law wasn't settled, but of course, that's not the test. It's rare that any defense is certain to succeed. You have to look at the likelihood that it's going to succeed. She also pointed to the fact that there was more than one defense, but your honor, there were three major ones. Barrow, an expert, did testify that the other two were not ones that a reasonable defendant would put weight into, and the statute of limitations was the only one that he wrote in his report was a colorable one. Also, if these other defenses mattered, they should have accounted for them. They shouldn't throw up their hands and say, because there's more than one defense, we don't have to account for them at all. Kings Cove, we think, forecloses that approach by saying, you can't just say it's infeasible, sometimes difficult, but you've got to do it. They also talked about it. Counselor, your time's up. Very complicated case, but it's the first of 26 we have this week. We're going to have to move on based upon your very thorough briefing and excellent argument, which has been very helpful, at least for me. Thank you. Thank you.